**IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| THE TRAVELERS INDEMNITY COMPANY, | ) | |
| THE TRAVELERS INDEMNITY COMPANY | ) | |
| OF CONNECTICUT; THE TRAVELERS | ) | |
| INDEMNITY COMPANY OF AMERICA; | ) | |
| THE CHARTER OAK FIRE INSURANCE | ) | |
| COMPANY; and ST. PAUL FIRE AND | ) | |
| MARINE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF SIKESTOWN MISSOURI; | ) | |
| JOHN BLAKELY; CHARLES ANDREW | ) | |
| JUDEN III, and DAVID L. ROBINSON, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

THE TRAVELERS INDEMNITY COMPANY, THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, THE TRAVELERS INDEMNITY COMPANY OF AMERICA, THE CHARTER OAK FIRE INSURANCE COMPANY, and ST. PAUL FIRE and MARINE INSURANCE COMPANY (collectively, the "Travelers Insurers") for their Complaint for Declaratory Judgment hereby states as follows:

## NATURE OF THE CASE

1.     This is a declaratory judgment action brought pursuant to 28 U.S.C. §§ 2201 and 1332.

2.     This action will resolve a dispute as to whether policies of insurance issued by the Travelers Insurers obligate them to defend or indemnify certain Defendants in relation to a lawsuit filed against them.

## PARTIES

3.      The Travelers Indemnity Company ("Travelers Indemnity") is a citizen of Connecticut. Travelers Indemnity is incorporated in Connecticut and its principal place of business is in Connecticut.

4.      The Travelers Indemnity Company of Connecticut ("Travelers Connecticut") is a citizen of Connecticut. Travelers Connecticut is incorporated in Connecticut and its principal place of business is in Connecticut.

5.      The Travelers Indemnity Company of America ("Travelers America") is a citizen of Connecticut. Travelers is incorporated in Connecticut and its principal place of business is in Connecticut.

6.      The Charter Oak Fire Insurance Company ("Charter Oak") is a citizen of Connecticut. Charter Oak is incorporated in Connecticut and its principal place of business is in Connecticut.

7.      St. Paul Fire and Marine Insurance Company ("St. Paul") is a citizen of Connecticut. St. Paul is incorporated in Connecticut and its principal place of business is in Connecticut.

8.      City of Sikeston, Missouri is a city of the third class incorporated pursuant to Missouri statutes and the Missouri Constitution ("Sikeston"). Sikeston is a defendant in the case entitled *David L. Robinson, v. City of Sikeston, Missouri, et al.,* case number 1:19-cv-41, pending in the United States District Court for the Eastern District of Missouri, Southeastern Division (the "Underlying Lawsuit"). Sikeston is a citizen of Missouri.

2

9.      John A. Blakely ("Blakely") is a defendant in the Underlying Lawsuit and is alleged to be a detective in the Sikeston Police Department. Blakely is a resident and citizen of Missouri.

10.     Charles Andrew Juden III ("Juden") is a defendant in the Underlying Lawsuit and is alleged to be the Captain or Chief of the Sikeston Police Department. Juden is a resident and citizen of Missouri.

11.     David L. Robinson ("Robinson" or the "Underlying Plaintiff") is a resident and citizen of Missouri. Robinson is a plaintiff in the Underlying Lawsuit.

12.     The Underlying Plaintiff is named as a defendant only because he may be a party in interest. The Travelers Insurers seek no relief from the Underlying Plaintiff other than to bind him to the outcome of this insurance coverage dispute.

## JURISDICTION AND VENUE

13.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14.     Jurisdiction is proper under 28 U.S.C. § 1332.

15.     Venue is proper under 28 U.S.C. § 1391 because the insurance contracts at issue in this declaratory judgment action were issued in this District and because this District embraces the geographic region where the Underlying Lawsuit was filed and where this controversy arose.

## THE UNDERLYING LAWSUIT

16.     The Underlying Plaintiff initiated the Underlying Lawsuit by filing a complaint on March 11, 2019. The Underlying Lawsuit arises out of the alleged wrongful arrest, conviction and incarceration of Robinson. The Underlying Lawsuit alleges that

Robinson was wrongfully arrested and convicted for murder in Sikeston, which took place between August 6 and August 30, 2000. A true and correct copy of the Complaint in the Underlying Lawsuit is attached as **Exhibit A** ("Complaint").

17.     In the Underlying Lawsuit, Robinson alleges that he was arrested on August 6, 2000, but later released without being charged for murder.

18.     While in police custody, Robinson alleges that Juden threatened him with a gun while Blakely watched and did not intervene.

19.     According to the Complaint, Blakely later obtained a false statement implicating Robinson in the murder. Based on that false statement, Blakely obtained a warrant and arrested Robinson for murder on August 30, 2000. A jury later convicted Robinson of murder and sentenced him to incarceration.

20.     According to the Complaint, Robinson pursued post-conviction and habeas corpus proceedings following his conviction. Eventually, Robinson filed a habeas corpus petition and the Missouri Supreme Court appointed a judge to hear evidence and make findings and conclusions about Robinson's conviction.

21.     On May 1, 2018 the Missouri Supreme Court granted Robinson habeas corpus relief. The State of Missouri elected not to retry Robinson. Robinson left prison on May 14, 2018.

22.     The Complaint contains the following counts or causes of action under federal law 42 U.S.C. § 1983: for wrongful arrest and for procurement and promotion of unreliable and false evidence; for First and Fourth Amendment violations of rights of access to courts in executive clemency; for conspiracy to deprive Robinson of his civil

rights; and a *Monell* claim for deprivation of liberty without due process of law under the Fourteenth Amendment.

23.    The Complaint also contains the following counts or causes of action under Missouri state law: false arrest; malicious prosecution; abuse of process; intentional infliction of emotional distress; negligent infliction of emotional distress; and civil conspiracy.

## THE POLICIES

24.    St. Paul issued the following policies to Sikeston:

| Policy Number | Policy Period |
|---|---|
| GP09304749 | 5/1/01 to 5/1/02 |
| GP09307812 | 5/1/02 to 5/1/03 |
| GP09310441 | 5/1/03 to 5/1/04 |
| GP09312423 | 5/1/04 to 5/1/05 |
| GP09312423 | 5/1/05 to 5/1/06 |
| GP09312423 | 5/1/06 to 5/1/07 |
| GP09312423 | 5/1/07 to 5/1/08 |
| GP09312423 | 5/1/08 to 5/1/09 |
| GP09312423 | 5/1/09 to 5/1/10 |

(collectively, the "St. Paul Policies"). Pertinent portions of the St. Paul Policies are attached hereto as **Exhibit B**.

25.    Travelers Indemnity issued the following primary policies to Sikeston:

| Policy Number | Policy Period |
|---|---|
| GP09315031 | 5/1/10 to 5/1/11 |
| GP09315031 | 5/1/11 to 5/1/12 |

(collectively, the "Travelers Indemnity Primary Policies"). Pertinent portions of the Travelers Indemnity Primary Policies are attached hereto as **Exhibit C**.

26.    Travelers Connecticut issued the following policies to Sikeston:

| Policy Number | Policy Period |
|---|---|

| 14R13934 | 5/1/12 to 5/1/13 |
| 14R13934 | 5/1/13 to 5/1/14 |
| 14R13934 | 5/1/14 to 5/1/15 |

(collectively, the "Travelers Connecticut Policies"). Portions of the Travelers Connecticut Policies are attached hereto as **Exhibit D**.

27.      Charter Oak issued policy number 14R13934 with effective dates May 1, 2015 to May 1, 2016 to Sikeston (the "Charter Oak Policy"). Portions of the Charter Oak Policy are attached hereto as **Exhibit E**.

28.      Travelers America issued the following policies to Sikeston:

| Policy Number | Policy Period |
| --- | --- |
| 14R13934 | 5/1/16 to 5/1/17 |
| 14R13934 | 5/1/17 to 5/1/18 |

(collectively, the "Travelers America Policies"). Portions of the Travelers America Policies are attached hereto as **Exhibit F**.

29.      Travelers Indemnity issued the following excess policies to Sikeston:

| Policy Number | Policy Period |
| --- | --- |
| GE09300104 | 5/1/10 to 5/1/11 |
| GE09300104 | 5/1/11 to 5/1/12 |
| 14R13946 | 5/1/12 to 5/1/13 |
| 14R13946 | 5/1/13 to 5/1/14 |
| 14R13946 | 5/1/14 to 5/1/15 |
| 14R13946 | 5/1/15 to 5/1/16 |
| 14R13946 | 5/1/16 to 5/1/17 |
| 14R13946 | 5/1/17 to 5/1/18 |

(collectively, the "Excess Policies"). Portions of the Excess Policies are attached as **Exhibit G**.

30.     The St. Paul Policies, Travelers Indemnity Primary Policies, Travelers Connecticut Policies, Charter Oak Policy and Travelers America Policies will be collectively referred to as the "Primary Policies". The Primary Policies and the Excess Policies will be collectively referred to as the "Travelers Policies."

31.     A controversy exists between the Travelers Insurers and the Defendants as to whether the Travelers Policies provide coverage in relation to the Underlying Lawsuit. The Travelers Insurers are entitled to a declaratory judgment in their favor holding that there is no coverage under the Travelers Policies in relation to the Underlying Lawsuit.

**COUNT I**

**The Law Enforcement Liability Policy Part Does Not Provide
Coverage for the Claims Made in the Underlying Lawsuit**

32.     The St. Paul Policies beginning on May 1, 2001 and ending May 1, 2004 include coverage form 47292 (10 98) titled Law Enforcement Liability Protection ("2001-2004 St. Paul LEL Coverage"). Form 47292 (10 98) is attached as part of **Exhibit H** and provides as follows:

> *We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:*
> - *results from the conduct of law enforcement duties by or for your law enforcement agency;*
> - *happens while this agreement is in effect; and*
> - *is caused by a wrongful act.*
>
> *         *         *
>
> ***Injury or damage*** *means bodily injury, personal injury, or property damage.*
>
> *         *         *

> ***Personal injury*** *means injury, other than bodily injury, caused by any of the following wrongful acts:*
> - *False arrest, detention, or imprisonment.*
> - *Malicious prosecution.*
>
>                   \*       \*       \*
>
> - *False or improper service of process.*
> - *Violation of civil rights protected under any federal, state or local law.*
>
>                   \*       \*       \*
>
> ***Wrongful act*** *means any act, error or omission.*

33.     The St. Paul Policies beginning on May 1, 2004 and ending May 1, 2010 include coverage form 47292 (10 02) titled Law Enforcement Liability Protection ("2004-2010 St. Paul LEL Coverage") (collectively, with 2001-2004 St. Paul LEL Coverage, the "St. Paul LEL Coverage"). Form 47292 (10 02) is attached as part of **Exhibit H** and provides as follows:

> ***Law enforcement liability.*** *We'll pay amounts any protected person is legally required to pay as damages for covered injury or damage that:*
> - *results from law enforcement activities or operations by or for you;*
> - *happens while this agreement is in effect; and*
> - *is caused by a wrongful act that is committed while conducting law enforcement activities or operations.*
> *We'll consider damages to include the attorneys' fees of the person or organization bringing the claim if such fees are awarded, or paid in a settlement, for covered injury or damage.*
>
>                   \*       \*       \*
>
> ***Protected person*** *means any person or organization that qualifies as a protected person under the Who Is Protected Under This Agreement Section.*
>
> ***Injury or damage*** *means bodily injury, personal injury, or property damage.*
>
> ***Bodily injury*** *means any harm to the health of other persons. It includes care, loss of services, or death that results from such harm.*

**Harm** *includes any of the following:*
- *Physical harm, sickness, or disease.*
- *Mental anguish, distress, injury, or illness.*
- *Emotional distress.*
- *Humiliation.*

**Personal injury** *means injury, other than bodily injury, caused by any of the following wrongful acts:*
- *False arrest, detention, or imprisonment.*
- *Malicious prosecution.*

*             \*             \*             \**

- *False or improper service of process.*
- *Violation of civil rights protected under any federal, state, or local law.*

34.     The Travelers Indemnity Primary Policies, Travelers Connecticut Policies, Charter Oak Policy and Travelers America Policies contain Law Enforcement Liability Coverage Form PR T1 04 02 09 ("Travelers LEL Coverage"). Form PR T1 04 02 09 is attached as part of **Exhibit I** and provides as follows:

> **SECTION I - LAW ENFORCEMENT LIABILITY COVERAGE**
> **1.     Insuring Agreement**
>
> > **a.**     *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal injury" to which this insurance applies…*
> >
> > **b.**     *This insurance applies to "bodily injury", "property damage" and "personal injury" only if:*
> > **(1)**     *The "bodily injury", "property damage" or "personal injury" is caused by a "wrongful act" committed by you or on your behalf while conducting "law enforcement activities or operations";*
> > **(2)**     *The "wrongful act" is committed in the "coverage territory"; and*
> > **(3)**     *The "bodily injury", "property damage" or "personal injury" occurs during the policy period.*

35.    The St. Paul LEL Coverage and the Travelers LEL Coverage (collectively, the "LEL Coverage") are only implicated by injury or damage that happens while the LEL Coverage is in effect.

36.    Any bodily injury or personal injury Robinson may have sustained happened in 2000, when he was arrested and then arraigned or indicted. No bodily injury or personal injury happened during the policy periods of the LEL Coverage and, therefore, the Primary Policies do not provide any coverage in relation to the Underlying Lawsuit.

37.    The 2001-2004 St. Paul LEL Coverage contains the following exclusion:

***Criminal or dishonest acts****. We won't cover injury or damage that results from any criminal, dishonest or fraudulent act or omission committed:*
- *by the protected person; or*
- *with the consent or knowledge of the protected person.*

*However, we won't apply this exclusion unless there has been a court determination that criminal, dishonest, or fraudulent conduct was committed by the protected person or with the consent or knowledge of the protected person.*

38.    The 2004-2010 St. Paul LEL Coverage contains the following exclusion:

***Criminal, dishonest, fraudulent, or malicious wrongful acts****. We won't cover injury or damage that results from any criminal, dishonest, fraudulent, or malicious act or omission committed:*
- *by the protected person; or*
- *with the consent or knowledge of the protected person.*

*However, we won't apply this exclusion to our duty to defend that protected person until it has been determined through legal processes that such act or omission was committed:*

- *by the protected person; or*
- *with the consent or knowledge of the protected person.*

*Nor will we apply this exclusion to personal injury caused by malicious prosecution.*

39.     The Travelers LEL Coverage contains the following exclusion:

**d.      *Criminal, Dishonest, Fraudulent, Or Malicious Wrongful Acts***

*"Bodily injury", "property damage" of "personal injury" arising out of any criminal, dishonest, fraudulent, or malicious "wrongful act", committed:*

*(1)     By the insured; or*
*(2)     With the consent or knowledge of the insured.*

*This exclusion does not apply to our duty to defend that insured until it has been determined or admitted in a legal proceeding that such "wrongful act" was committed:*

*(1)     By that insured; or*
*(2)     With the consent or knowledge of that insured.*

*This exclusion also does not apply to "personal injury" caused by malicious prosecution.*

40.     The Underlying Lawsuit is based on fraudulent, criminal, or dishonest conduct allegedly committed by the defendant officers. Robinson alleges that Blakely, threatened witnesses, encouraged witnesses to give false testimony, ignored and suppressed evidence that could have exonerated Robinson. Juden and Sikeston allegedly knowingly supported and assisted Blakely's acts. Blakely, Juden and Sikeston are alleged to have acted deliberately, recklessly, wantonly and in bad faith, were motivated by evil motive or intent, and/or involved callous indifference.

41.     The Underlying Lawsuit arises out of conduct that comes within the terms of these exclusions for criminal, dishonest, fraudulent, or malicious wrongful acts; therefore, no coverage is available under the LEL Coverage for the Underlying Lawsuit.

**COUNT II**

**The General Liability Policies and Policy Parts Do Not Provide
Coverage for the Claims Made in the Underlying Lawsuit**

42.     The St. Paul Policies beginning on May 1, 2001 and ending May 1, 2004 include coverage form G0209 (10-97) titled Public Entity General Liability Protection ("2001-2004 St. Paul PEGL Coverage"). Form G0209 (10-97) is attached as part of **Exhibit H** and provides as follows:

> ***Bodily injury and property damage liability.*** *We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:*
> * *happens while this agreement is in effect; and*
> * *is caused by an event.*
>
> ***Protected person*** *means any person or organization that qualifies as a protected person under the* Who Is Protected Under This Agreement *section.*
>
> ***Bodily injury*** *means any physical harm, including sickness or disease, to the physical health of other persons. It includes any of the following that results at any time from such physical harm, sickness, or disease:*
> * *Mental anguish, injury, or illness.*
> * *Emotional distress.*
> * *Care, loss of services, or death.*
>
> ***Event*** *means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

43.     The St. Paul Policies beginning on May 1, 2004 and ending May 1, 2010 include coverage form G0209 (10-02) titled Public Entity General Liability Protection ("2004-2010 St. Paul PEGL Coverage") (collectively, with 2001-2004 St. Paul PEGL Coverage, the "St. Paul PEGL Coverage"). Form G0209 (10-02) is attached as part of **Exhibit H** and provides as follows:

> ***Bodily injury and property damage liability.*** *We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:*

- *happens while this agreement is in effect; and*
- *is caused by an event.*

***Protected person*** *means any person or organization that qualifies as a protected person under the Who Is Protected Under This Agreement section.*

***Bodily injury*** *means any physical harm, including sickness or disease, to the physical health of other persons.*

*We'll consider any of the following that happens at any time to be part of such physical harm, sickness, or disease, if it results in or from such physical harm, sickness, or disease:*
- *Mental anguish, injury, or illness.*
- *Emotional distress.*
- *Care, loss of services, or death.*

*We'll consider any bodily injury that's a continuation, change, or resumption of previously known bodily injury to happen before this agreement begins if such continuation, change, or resumption would otherwise be considered to happen while this agreement is in effect because of a continuous, multiple, or other coverage trigger required under the law that applies.*

***Event*** *means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.*

44.     The Travelers Indemnity Primary Policies, Travelers Connecticut Policies, the Charter Oak Policy, and Travelers America Policies provide Commercial General Liability ("CGL") Coverage written on Form CG 00 01 10 01 ("Travelers CGL Coverage"). Form CG 00 01 10 01 is attached as part of **Exhibit I** and provides as follows:

*1.     **Insuring Agreement***

    ***a.***    *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…*

    ***b.***    *This insurance applies to "bodily injury" and "property damage" only if:*

>   *(1)  The "bodily injury" or "property damage" is caused by*
>   *an "occurrence" that takes place in the "coverage*
>   *territory";*
>   *(2)  The "bodily injury" or "property damage" occurs during*
>   *the policy period; and*
>   *(3)  Prior to the policy period, no insured listed under*
>   *Paragraph **1.** of Section **II** – Who Is An Insured and*
>   *no "employee" authorized by you to give or receive*
>   *notice of an "occurrence" or claim, knew that the*
>   *"bodily injury" or "property damage" had occurred, in*
>   *whole or in part.*

45.     The St. Paul PEGL Coverage only responds to "bodily injury" that happens while the St. Paul Policies are in effect and that is caused by an "event." The Travelers CGL Coverage only responds to "bodily injury" that occurs during the policy period and is caused by an "occurrence."

46.     The Underlying Lawsuit does not allege "bodily injury" during the policy periods of the Primary Policies. All of the Underlying Plaintiffs alleged injuries were caused by conduct prior to and took place prior to the Primary Policies' effective dates.

47.     To the extent any bodily injury is alleged, it was not caused by an "occurrence" or "event." "Occurrence" and "event" mean an accident. The Underlying Lawsuit arises from intentional acts and intentional conduct. Robinson alleges that Blakely, Juden and the Sikeston Police targeted him and acted intentionally in arresting and threatening him following his August 6, 2000 arrest. The Underlying Lawsuit alleges that Robinson's false arrest and malicious prosecution resulted in his detention and incarceration and suffering of physical, emotional and pecuniary damages. Robinson alleges further in his Count VIII for Intentional Infliction of Emotional Distress that Sikeston, Blakely and Juden's acts and intentional omissions caused Robinson extreme emotional distress so severe that it resulted in bodily harm. The "occurrence" or "event"

requirements are not satisfied and there is no coverage in relation to the Underlying Lawsuit.

48.     The 2001-2004 St. Paul PEGL Coverage further provides:

***Personal injury liability.*** *We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:*
- *results from your operations, other than advertising, broadcasting, publishing, or telecasting done by or for you; and*
- *is caused by a personal injury offense committed while this agreement is in effect.*

***Personal injury*** *means injury, other than bodily injury or advertising injury, that's caused by a personal injury offense.*

***Personal injury offense*** *means any of the following offenses:*
- *False arrest, detention, or imprisonment.*
- *Malicious prosecution….*

49.     The 2004-2010 St. Paul PEGL Coverage provides as follows:

***Personal injury liability.*** *We'll pay amounts any protected person is legally required to pay as damages for covered personal injury that:*
- *results from your operations; and*
- *is caused by a personal injury offense committed while this agreement is in effect.*

***Personal injury*** *means injury, other than bodily injury or advertising injury, that's caused by a personal injury offense.*

***Personal injury offense*** *means any of the following offenses:*
- *False arrest, detention, or imprisonment.*
- *Malicious prosecution….*

50.     The Travelers PEGL Coverage provides as follows:

***COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY***
***1.     Insuring Agreement***

> ***a.***     *We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking*

*damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:*

*(1)     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and*

*(2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.*

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.*

**b.**     *This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.*

51.     The personal injury coverage of the St. Paul PEGL Coverage and Travelers CGL Coverage are only implicated by an offense that is committed while the Primary Policies are in effect.

52.     Any personal injury offense alleged in the Underlying Lawsuit was committed in 2000 when Robinson was allegedly falsely arrested and indicted or arraigned for murder. Because no personal injury offense was committed during any Primary Policy period, the St. Paul PEGL Coverage and Travelers CGL Coverage do not provide any coverage in relation to the Underlying Lawsuit.

53.     The 2001-2004 St. Paul PEGL Coverage also contains the following exclusion:

**Law enforcement duties.** *We won't cover injury or damage or medical expenses that result from the conduct of law enforcement duties.*

**Law enforcement duties** *means any of the duties or obligations that must be performed or fulfilled by a law enforcement agency.*

*They include:*

- *the ownership, maintenance, or use of a premises that you own, rent, or lease in order to perform or fulfill law enforcement duties; and*
- *the providing of first aid at the time of an accident.*

*But we won't consider injury or damage or medical expenses that result from the ownership, maintenance, or use of a premises that isn't usually used for the conduct of law enforcement duties to be law enforcement duties.*

54.    The 2004-2010 St. Paul PEGL Coverage also contains the following exclusion:

***Law enforcement activities or operations.*** *We won't cover injury or damage or medical expenses that result from law enforcement activities or operations.*

***Law enforcement activities or operations*** *means any of the official activities or operations of your police department, sheriff agency, or other public safety organization which enforces the law and protects persons or property.*

*They include the following:*
- *Ownership, maintenance, or use of a premises that you own, rent, lease, or borrow in order to perform such activities or operations.*
- *Providing first aid at the time of an accident, crime, or medical emergency.*

*But we won't consider injury or damage or medical expenses that result from the ownership, maintenance, or use of a premises that isn't usually used for the conduct of law enforcement activities or operations to result from law enforcement activities or operations.*

55.    The Travelers CGL Coverage contains the following exclusions added by endorsement:

*This insurance does not apply to:*

*"Bodily injury" or "property damage" arising out of "law enforcement activities or operations". […]*

*"Personal injury" or "advertising injury" arising out of "law enforcement activities or operations". […]*

*"Law enforcement activities or operations":*

17

> a.  *Means any of the official activities or operations of your*
> *police department, sheriff agency or other public safety*
> *organization, other that a fire district or department, that*
> *enforces the law and protects persons or property; and […]*

56.     The Underlying Lawsuit arises out of law enforcement activities or
operations. These exclusions, therefore, preclude coverage under the St. Paul PEGL
Coverage and the Travelers GL Coverage.

57.     The St. Paul PEGL Coverage also contains the following exclusions:

> ***Expected or intended bodily injury or property damage.*** *We*
> *won't cover bodily injury or property damage that's expected or*
> *intended by the protected person. Nor will we cover medical*
> *expenses that result from such bodily injury.*
>
> *But we won't apply this exclusion to bodily injury, property damage,*
> *or medical expenses that result from the use of reasonable force to*
> *protect persons or property.*

58.     The Travelers PEGL Coverage contains the following exclusion:

> *This insurance does not apply to:*
>
> ***a.    Expected Or Intended Injury***
> *"Bodily injury" or "property damage" expected or intended*
> *from the standpoint of the insured. This exclusion does not*
> *apply to "bodily injury" resulting from the use of reasonable*
> *force to protect persons or property.*

59.     The Underlying Lawsuit is based upon intentional acts and intentional
conduct. Robinson alleges that he was threatened with a gun by Juden and later
arrested again based on a statement that Blakely knew to be false. Robinson alleges
that Blakely coerced false statements to implicate Robinson in the murder, deliberately
ignored evidence that undermined the case against Robinson, intimidated witnesses
who would have testified favorably for Robinson. Juden and Sikeston allegedly knew
about this and similar behavior. The Underlying Lawsuit arises out of conduct that

comes within the terms of these exclusions for and expected or intended injury and, therefore, there is no coverage under the St. Paul PEGL Coverage or the Travelers CGL Coverage in relation to the Underlying Lawsuit.

**COUNT III**

**The Public Entity Management Liability Policy Part Does**
**Not Provide Coverage for the Claims Made in the Underlying Lawsuit**

60.     The Primary Policies contain policy forms 47279 (10-98), 47279 (1-01), 47279 (07 06) or PR T1 06 02 09 titled Public Entity Management Liability Protection – Claims-Made ("PEML Coverage"). These forms are attached as part of **Exhibits H** and **I**. The PEML Coverage is claims made coverage that only applies to claims made during the policy term.

61.     The Underlying Lawsuit was filed on March 11, 2019, after all of the Primary Policies had expired.

62.     The PEML Coverage does not apply because there was no claim made during the Primary Policies and/or to the extent the terms of a PEML Coverage Insuring Agreement is not otherwise satisfied.

63.     To the extent a PEML Coverage Insuring Agreement is satisfied, various exclusions in the PEML Coverage apply to bar coverage including the following: "Injury or damage"; "Intentionally wrongful or dishonest acts"; "Known wrongful acts"; "Law enforcement duties"; "Criminal, dishonest, fraudulent, or intentionally wrongful acts"; "Criminal, malicious, dishonest, or fraudulent acts or omissions, or knowing violations of rights or laws"; "Law enforcement activities or operations"; "Multiplied damages"; and/or "Criminal, dishonest, fraudulent, or malicious wrongful acts or knowing violations of rights or laws."

64.     The allegations and damages in the Underlying Lawsuit are based upon conduct and/or injury within the terms of these exclusions, precluding coverage.

**COUNT IV**

**The Excess Policies Do Not Provide
Coverage for the Underlying Lawsuit**

65.     The Excess Policies provide excess insurance coverage over the applicable underlying limit identified in each Excess Policy. Pertinent forms from the Excess Policies are attached as **Exhibit J**.

66.     Pursuant to the "other insurance" provision, the Excess Policies are excess to all applicable and/or collectible insurance.

67.     To the extent the applicable underlying limit and all other applicable and/or collectible insurance have not been exhausted, no coverage is available under the Excess Policies.

68.     The Excess Policies' Law Enforcement Liability Coverage parts and Public Entity Management Liability Coverage parts follow form the underlying LEL Coverage and PEML Coverage.

69.     To the extent coverage is unavailable pursuant to the underlying LEL Coverage and PEML Coverage parts, coverage is also unavailable pursuant to the Excess Policies' Law Enforcement Liability Coverage and Public Entity Management Liability parts.

70.     The allegations in the Underlying Lawsuit also do not satisfy the Insuring Agreements of the Excess Policies and no coverage is available.

71.     The Excess Policies apply to "bodily injury" that occurs during the policy period and/or "personal injury" caused by an offense during the policy period.

72.     The Underlying Lawsuit does not allege "bodily injury" during the policy periods of the Excess Policies. It also does not allege "personal injury" caused by an offense during the policy periods. The insuring agreements of the Excess Policies are not satisfied.

73.     To the extent the insuring agreements of the Excess Policies are deemed satisfied, one or more of the following exclusions in the Excess Policies preclude coverage in relation to the Underlying Lawsuit: "Expected or Intended Injury"; "Knowing Violation Of rights Of Another"; "Criminal Acts"; and/or "Abuse or Molestation."

74.     The allegations and damages in the Underlying Lawsuit are based upon conduct and/or injury within the terms of these exclusions, precluding coverage.

**WHEREFORE**, the Travelers Insurers pray that this Honorable Court enter judgment in their favor as follows:

(a)     Declaring that the Travelers Insurers have no duty under the Travelers Policies to defend or indemnify any of the Defendants for the claims made in the Underlying Lawsuit; and

(b)     Granting such other relief as this Court deems just and appropriate.


Dated:          April 25, 2019

                              THE TRAVELERS INDEMNITY COMPANY, THE
                              TRAVELERS INDEMNITY COMPANY OF
                              CONNECTICUT, THE TRAVELERS INDEMNITY
                              COMPANY OF AMERICA, THE CHARTER OAK
                              FIRE INSURANCE COMPANY, and ST. PAUL FIRE
                              and MARINE INSURANCE COMPANY


                              By:  /s/ Kevin P. Clark
                                     One of its Attorneys

Kevin P. Clark, #53811
LITCHFIELD CAVO LLP
222 South Central Avenue, Suite 200
Clayton, MO 63105
(314) 725-1227  (Phone)
(314) 725-3006  (Facsimile)
Clark@LitchfieldCavo.com